# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE and JANE ROE, | )<br>) |
| Plaintiffs | )<br>) |
| v. | ) NO. 3:16-cv-0856<br>) CHIEF JUDGE CRENSHAW |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant | ) |

## MEMORANDUM OPINION

Pending before the Court is a Motion to Transfer and to Dismiss (Doc. No. 16),[1] filed by the United States of America ("the Government"). Plaintiffs have filed a Response in opposition to the Government's Motion (Doc. No. 21), the Government has filed a Supplemental Brief (Doc. No. 24), Plaintiff has filed a Response to the Government's Supplemental Brief (Doc. No. 27), Plaintiff has filed Supplemental Authority (Doc. No. 28), and the Government has filed a Second Supplemental Memorandum (Doc. No. 32). For the reasons stated herein, the Government's Motion to Transfer and Dismiss will be DENIED.

### INTRODUCTION

Plaintiffs are Honduran asylum-seekers who fled to the United States in July of 2013. Plaintiffs entered the United States near Hildago, Texas, with their two-year-old son. Plaintiff Roe was, at that time, six to seven months pregnant. Plaintiffs found the nearest U.S. Customs and Border Protection ("CBP") station to turn themselves in and seek asylum. CBP officers with the

---

[1] Docket No. 16 is actually the Memorandum in Support of Defendant's Motion to Transfer and to Dismiss. There is no separate Motion to Transfer and to Dismiss on the record, so the Court will treat this document as the Motion and Memorandum together.

Weslaco Station in the Rio Grande Valley Sector took Plaintiffs into custody and transported them to a detention center known as the "hielera."[2] This action arises from the alleged mistreatment of Plaintiffs by CBP officials during Plaintiffs' stay in the hielera. Plaintiffs allege that the CBP officers stripped Plaintiffs of their extra clothing, diapers, and baby supplies; required them to stay in a frigid concrete cell with dozens of other detainees; and failed to provide them with beds, warm clothes, blankets, private toilet space, toilet paper, soap, toothbrushes, toothpaste, edible food or water, all in violation of U.S. Border Patrol Policy and CBP policies.

Plaintiffs assert that, as a result of the conditions in the hielera, Plaintiff Roe became very ill and begged for medical treatment until the officers took her to a nearby hospital, where medical personnel determined that she was in the process of dilation. Despite being informed that Plaintiff Roe should be released from detention immediately so as to prevent pre-term labor and minimize the health risks to her and to her unborn child, CBP officials returned Plaintiff Roe to the hielera. Plaintiffs contend that their son also became visibly ill and dehydrated, but the officers did not provide any medical treatment for him at all. CBP officers eventually drove Plaintiffs and their son to a Greyhound bus station and left them there alone at approximately 12:45 a.m. on July 29, 2013.

The First Amended Complaint asserts causes of action for negligence, negligent supervision, and intentional infliction of emotional distress under the Federal Torts Claims Act ("FTCA"). The Government asks the Court to transfer this action to the U.S. District Court for the Southern District of Texas, where all of the alleged misconduct occurred, where the majority of witnesses live, where most of the sources of proof are, and where the court could allegedly better apply Texas state law.

---

[2] The First Amended Complaint alleges that "hielera" is Spanish for "icebox" or "freezer," and the name is given to the holding facilities because of the frigid temperatures at which CBP maintains those facilities.

The Government alternatively asks the Court to dismiss the First Amended Complaint for failure to state a claim upon which relief may be granted.

MOTIONS TO TRANSFER

Defendants seek transfer of this action pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden of proving that transfer is warranted is on the moving party, and the burden is a substantial one. Smith v. Kyphon, Inc., 578 F.Supp.2d 954, 958 (M.D. Tenn. 2008). As the permissible language of the transfer statute suggests, district courts have broad discretion to determine when convenience or the interests of justice make a transfer appropriate. Reese v. CNH America LLC, 574 F.3d 315, 320 (6th Cir. 2009). The burden requires a clear and convincing showing that the balance of convenience strongly favors the alternate forum. Flores v. United States, 142 F.Supp.3d 279, 287 (E.D.N.Y. 2015).

In reviewing a motion to transfer, the court is to balance all relevant factors, including the private interests[3] of the parties and public-interest concerns,[4] such as systemic integrity and fairness, which come under the rubric of "interests of justice." Encore Medical, L.P. v. Kennedy, 861 F.Supp. 2d 886, 895 (E.D.Tenn. 2012). And, the court should keep in mind that unless the balance is strongly

---

[3] Private interests include the convenience of the parties and witnesses, relative ease of access to sources of proof, availability of process to compel attendance of unwilling witnesses, cost of obtaining willing witnesses, and practical problems indicating where the case can be tried more expeditiously and inexpensively. Smith, 578 F.Supp.2d at 962.

[4] Public interests include the enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law. Smith, 578 F. Supp.2d at 262.

3

in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Smith, 578 F.Supp.2d at 962. Convenience of non-party witnesses, as opposed to parties or employee witnesses, is one of the most important factors in the transfer analysis. Id. at 963. Transfer of venue is inappropriate where it would serve only to transfer the inconvenience from one party to the other. Heldman v. King Pharmaceuticals, Inc., 2010 WL 5300875 at * 2 (M.D. Tenn. Dec. 20, 2010); Diebold, Inc. v. Firstcard Fin. Servs., Inc., 104 F.Supp.2d 758, 764 (N.D.Ohio 2000). In determining convenience, a court should consider: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum. Stewart v. American Eagle Airlines, Inc., 2010 WL 4537039 at * 2 (M.D. Tenn. Nov. 3, 2010).

ANALYSIS

The parties do not dispute that this action "could have been brought" in Texas. A plaintiff's choice of forum is a significant factor in considering whether to transfer an action, especially where the plaintiff also resides in the chosen forum. Smith, 578 F.Supp.2d at 962. Plaintiffs' choice of this forum weighs in favor of not transferring this action.

Similarly, the convenience of the parties weighs in favor of not transferring this action because Plaintiffs are here and have fewer resources to travel and litigate in Texas than the Government has to travel and litigate in Middle Tennessee. Plaintiffs and their two small children live in Middle Tennessee, and a transfer to Texas, more than a thousand miles away, would impose a significant financial hardship upon them. A transfer is disfavored where it merely shifts the burden of litigating in an inconvenient forum to the plaintiff. Alvarado v. United States, 2017 WL 2303758 at * 6 (D.N.J. May 25, 2017). Where disparity exists between the parties, the relative means of the

4

parties may be considered. Flores, 142 F.Supp.3d at 289. Here, as in Flores, there can be no dispute that there is a significant disparity in the relative means of the parties, and this factor weighs against the requested transfer.

The convenience of witnesses, especially non-party witnesses, is another important factor in the transfer analysis. Stewart at * 2 (citing Smith, 578 F.Supp.2d at 963). The Government argues that every key witness, other than Plaintiffs, is located in Texas. Those witnesses include the CBP officers (party witnesses) and the physician who saw Plaintiff Roe at the hospital (a third-party witness). The Government has not provided any evidence that CBP employees would be unwilling to testify in this district if asked to do so.[5] As federal employees, these witnesses may be compelled to testify by the Government. Alvarado, 2017 WL 2303758 at * 7.

Plaintiffs argue that they, their counsel, their treating physician (a third-party witness) and their damages witnesses (also third parties), are all in Tennessee. In addition, Plaintiffs point out that video depositions may be taken of any of the Government's witnesses who cannot travel to Tennessee. Transfer of this case would merely shift the inconvenience of witnesses from Defendant to Plaintiff. For example, the non-party physician in Texas would not be subject to compulsory process in this Court, but the non-party physician in Tennessee would likewise not be subject to compulsory process in Texas. Neither side has indicated why depositions of its non-party witnesses would be inadequate and live testimony required. The Government has not carried its burden of showing that the convenience of non-party witnesses favors a transfer to Texas.

---

[5] The convenience of witnesses who are employees of a party will not ordinarily be given the same consideration as is given to other witnesses. B.E. Technology, LLC v. Groupon, Inc., 957 F.Supp.2d 939, 945 (W.D. Tenn. 2013).

The location and sources of proof are a neutral factor in this case, given the present technology for producing documents and other evidence. The location of events giving rise to this action weighs in favor of transferring the action to Texas, where the alleged wrongful conduct occurred and the challenged conditions existed. Under the FTCA, Texas substantive law will apply to Plaintiffs' claims. 28 U.S.C. § 1346(b)(1); Isbell v. United States, 2014 WL 2591403 at * 4 (M.D. Tenn. June 10, 2014). Courts have found this factor to be neutral where, as here, the only matters of state law involve common law torts or negligence (Alvarado, 2017 WL 2303758 at * 8), and this Court is capable of applying Texas tort law.

As far as systemic integrity and fairness, this case involves federal detention centers and alleges mistreatment by federal officers. All states have an interest in the country's policies and practices for processing and detaining asylum seekers. Where, as here, the issues are national in scope, the Court finds that public interests do not warrant a transfer. The United States argues that this case should be transferred to Texas because other cases involving the hielera and similar circumstances have been transferred there. The adjudication of Plaintiffs' particular FTCA claims against the Government, however, is unique to Plaintiffs. Plaintiffs' allegations and the facts surrounding their situations, while perhaps similar to others, involve individual facts and circumstances. The Court does not find this alleged practical consideration to be persuasive or to require a transfer.

Having considered all the factors explained above, the Court finds that the Government has failed to carry its heavy burden of demonstrating that a transfer would promote the convenience of the parties and witnesses or would be in the interests of justice. Therefore, the Motion to Transfer will be denied.

MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

ANALYSIS

The Government alternatively argues that Plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted. It contends that Plaintiffs have failed to allege any legally cognizable injury. The Government claims that the kinds of discomfort and inconvenience Plaintiffs allege are not actionable under Texas law.

Plaintiffs, on the other hand, argue that they have sufficiently alleged egregious and deplorable conditions that resulted in both Plaintiff Roe and their son requiring medical treatment (although none was given to their son). Plaintiffs assert that the horrific conditions in the hielera inflicted severe emotional distress upon them and caused injuries of physical pain and suffering, humiliation, emotional distress, and ongoing psychological harm. The Court agrees that Plaintiffs

have sufficiently alleged, for purposes of a Motion to Dismiss, injuries allegedly caused by the Government's misconduct. Plaintiffs have sufficiently stated a claim for which relief may be granted, and the Government's Motion to Dismiss will be denied.

## CONCLUSION

For these reasons, the Government's Motion to Transfer and Motion to Dismiss will be denied.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE